# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JANETTE RIVERA,**

     **Plaintiff,**

**-vs-**              **Case No. 6:07-cv-1774-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for a period of disability and disability insurance benefits and Supplemental Security Income under the Social Security Act. For the reasons set forth herein, it is **respectfully recommended** that the decision be **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and for Supplemental Security Income on November 22, 2004, alleging an onset date of May 1, 2004 (R. 13).[1] This claim was denied initially and upon reconsideration and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 13, 44, 350). An unfavorable decision was issued on June 20, 2007 (R. 10-23), and Plaintiff requested Appeals Council review (R. 9). Upon the denial of the request for review (R. 5-7), the decision of the ALJ became the final decision of the Commissioner. This action timely followed (Doc. No. 1).

_____

[1]It appears Plaintiff has filed other earlier applications, all unsuccessful (R. 61).

The parties have consented to the jurisdiction of the United States Magistrate Judge and the matter is now briefed and ready for resolution.

### NATURE OF CLAIMED DISABILITY

Plaintiff alleges that she became disabled as of May 1, 2004, due to schizophrenia, manic-depression and asthma (R. 98).  She also asserts limitations of severe back pain (R. 117) and, at hearing, obesity (R. 386).

#### Summary of Evidence Before the ALJ

Plaintiff was 42 years old at the time of the final decision (R. 23, 74), with a 10th grade education (R. 103), and previous work experience as a housekeeper, restroom attendant, deli clerk, and restaurant worker (R. 82).

The medical evidence relating to the pertinent time period (alleged onset through date of the decision) is well presented in the ALJ's detailed opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections.  By way of summary, medical records from Plaintiff's treating physicians and mental health practitioners covering the pertinent time period indicate that Plaintiff was diagnosed with major depression, schizo-affective disorder and a personality disorder, as well as asthma.  Treatment records indicate that she did well when she was compliant with prescribed medications (R. 222, 224, 219) and did poorly when she was not compliant (R. 285, 289, 308).

With respect to her mental health, Plaintiff was treated as an Adult Psychiatric Outpatient at the Ruth Cooper Center in January 2004, prior to her date of onset (R. 226).  Plaintiff was diagnosed with major depression, with psychotic features, poly-substance dependence, in remission and borderline personality disorder.  She reported that she was working full time, and that she feels better

when she takes her medication.  On a March 1, 2004 return visit, her mood was appropriate and she noted good results with her medication (R. 224).  She testified at hearing that she stopped working in May 2004, not because of any disability but because she was laid off (R. 360).  On her next return visit on October 4, 2004, Plaintiff reported doing "pretty good," was compliant with medications and had no side effects (R. 222).  Her mental status examination was unremarkable, and her GAF[2] was assessed as 65-70.  She continued to do well, with a GAF of 70 in December 2004 (R. 221), and by May 20, 2005, her treating physician felt she was stable, doing "very well," assessed her major depression to be "remitted" and assessed her GAF at 70 (R. 219).

Plaintiff's next mental health treatment was on March 17, 2006, when Plaintiff presented herself to Lakeside Alternatives Behavioral Center, requesting voluntary admission as she had been off her medications for five months, and was told at the outpatient clinic that she "had to be here to be put back on medication." (R. 285).  She presented as depressed, with a low energy level and reported "hearing voices off and on." (R. 288).  Notably, her physical examination was normal.  She was assessed with a GAF of 58 (R. 289) and the physician felt that "she does not require intensive inpatient treatment at this time" but could be treated on an outpatient basis (R. 289).  Her medications were renewed, and she was discharged that day.

Plaintiff returned to Lakeside On March 31, 2006, and saw Linda Yankovic, A.R.N.P. (R. 275).  She noted improvement in Plaintiff's depression ("only at times now") and found Plaintiff to be cooperative, with fair insight and judgment.  That same day, Nurse Yankovic completed a form indicating that Plaintiff cannot work because "[Patient] has auditory hallucinations and is very depressed." (R. 277).  Outpatient medications continued.

---

[2]Global Assessment of Functioning.

Plaintiff returned to Lakeside on a voluntary basis on October 6, 2006, reported being homeless, and requesting: "Get me back on my medications and help me find housing." (R. 308). The evaluating physician noted that she "arrived at the access center reporting suicidal ideation without plan which seemed to be a ticket for admission based on what she told me." (R. 308). On physical examination, neurological, sensory, motor and reflexes were all normal (R. 311). On mental status examination, Plaintiff was alert, cooperative, oriented, but mood was depressed, hopeless and helpless. Memory was intact as was attention span and concentration, and insight and judgment were fair (R. 311-312). Her current GAF was 33. She was placed into the locked unit for treatment, on a voluntary basis, and was placed back on her medications. *Id.* She immediately improved, and was discharged into a residential program on October 18, 2006, with a GAF of 60 (R. 317). On return visit November 20, 2006, Plaintiff was noted to be non-compliant with her medications (R. 319). On return visit on March 2, 2007, she complained of being out of her medication (R. 327).

Treatment records from her doctors with respect to her asthma and other physical problems are relatively sparse, and do not reveal any physician imposed limitations.

In addition to treating records, the record contains evidence from an examining state agency psychologist (R. 257-260), as well as non-examining psychologists (R. 182-198; 261-273). Also, Plaintiff appeared at her hearing, and testified as to her condition and limitations, and the record includes several reports from Plaintiff, as well as others (her roommate, her daughter) regarding her functional abilities and daily activities. A Vocational Expert ("VE") also appeared and testified.

Based on the above, the ALJ found that Plaintiff had the severe impairments of asthma and an affective disorder, but that the impairments neither singularly nor in combination met or equaled the Listings (R. 15). The ALJ determined that Plaintiff retained the ability to perform a limited range

of sedentary work (R. 16, 23).  Relying upon vocational expert testimony, he found that Plaintiff could not return to her past work, but could perform a significant number of jobs and was, therefore, not disabled within the meaning of the Social Security Act (R. 22-23).

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### ISSUES AND ANALYSIS

Plaintiff asserts that the ALJ's decision was not made in accordance with the law in that he: 1) failed to give proper weight to the medical opinions of the treating physicians; 2) failed to evaluate

Plaintiff's obesity impairment; 3) failed to properly analyze Plaintiff's chronic pain;[3] and 4) failed to provide the vocational expert with an accurate description of Plaintiff's limitations.  The Court treats each issue, in turn.

*Treating Physician*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or

---

[3]Although Plaintiff cites this as an issue, she fails to offer any argument in support of her contention, and it is therefore waived.

contradict the opinion. 20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff contends that the ALJ did not give sufficient weight to the opinions of Dr. Santo Delos Angeles, M.D. and Linda Yankovic, A.R.N.P. that Plaintiff was "totally disabled." (Doc. No. 14 at pg. 16).  The Court sees no error.

The opinion of Dr. Santo Delos Angeles is dated January 9, 2007, yet was provided to the Appeals Council as new evidence (R. 348), and thus was not before the ALJ.[4]  The Court must consider evidence not submitted to the ALJ but considered by the Appeals Council, and determine whether the new evidence renders the denial of benefits erroneous.  *Ingram v. Commissioner of Social Security,* 496 F. 3d 1253 (11th Cir. 2007).  Here, the Court agrees with the Appeals Council that the new evidence does not provide a basis for changing the administrative decision (R. 5-6).

The "opinion" is not a medical record at all, but a "disability certificate for shelter plus care" form on Orange County letterhead which, according to counsel, "allowed [Plaintiff] eligibility to live in Lakeside Behavioral Center." (R. 348).  It reads, in its entirety: "I hereby certify that Janet [sic] Rivera is a disabled individual as defined by 24 Code of Federal Regulations (CER) 5.403." (R. 344).  A check mark appears next to the text of the regulation.  There is no diagnosis or explanation provided by this physician as support for this conclusion, nor is it clear that at the time this note was written, a treating physician relationship was firmly established with this physician.  As set forth above, Plaintiff presented in October 2006 to Lakeside and was evaluated by Dr. Balsam (R. 308).  She was then treated by Drs. Duong and Mobin until discharge on October 18, 2006 (R. 314-318).  It appears

---

[4]The briefs do not directly address the issue, but there is no explanation as to why the record was not submitted to the ALJ at the June 2007 administrative hearing.

that Dr. Angeles saw Plaintiff just once, on November 20, 2006, prior to completing that form (R. 319-320).  His sole treatment note does not support a conclusion of total disability.[5]

As for the opinion of Linda Yankovic, A.R.N.P., as Plaintiff acknowledges, Ms. Yankovic is not a physician or an acceptable medical source and her opinion is not entitled to controlling weight. The ALJ did not err in discounting this opinion (R. 20).   To the extent Plaintiff asserts that the opinion is consistent with the treatment records and should therefore have been credited (Brief at 16), this mischaracterizes the nature of this Court's review.   The issue is whether the administrative decision is supported by substantial evidence – not whether it is consistent with *all* the evidence. Here, the ALJ gave a detailed rationale for finding that Plaintiff's mental health limitations were not disabling (R. 20).   As that finding is supported by substantial evidence (including Plaintiff's excellent response to treatment, months without any treatment, relatively stable mental status examinations, and reports of her activities) it will not be disturbed.[6]

*Evaluation of all Impairments*

This argument reads, in its entirety:

> In the instant case, the ALJ discussed some, but not all of plaintiff's impairments. The Regulations require the ALJ to consider the combined effect of a plaintiff's impairments, even when those impairments are considered to be non-severe when considered separately, 20 CFR § 416.923 (the Commissioner will consider the combined effect of all plaintiffs impairments with regard to whether any such impairment, if considered separately, would be of sufficient severity); and 20 CFR § 416.945(e) (the Commissioner will consider the limiting effect of all of a plaintiff's impairments, even those that are non severe).  As indicated above, Plaintiff had a severe case of obesity and at no time was Plaintiff's obesity discussed by the ALJ.

---

[5] Although Plaintiff reported auditory hallucinations, it was noted that she was, once again, non-compliant with her medications (R. 319).  Her mental status examination was otherwise fair.

[6] The Court is unpersuaded by Plaintiff's contention that living in a group home is *per se* evidence of disability. Plaintiff presented to Lakeside on a voluntary basis for help with her medications and  finding someplace to live. Upon her discharge from Lakeside into residential housing, again, on a voluntary basis, she was noted to be stable and had a GAF of 60, which does not indicate disabling symptoms. Indeed, on prior presentation to Lakeside, she had a lower GAF but it was felt no inpatient treatment was needed. It appears, therefore, that the housing situation was more due to Plaintiff's homelessness than a critical need for group home care.

(Doc. No. 14 at p. 18).

Plaintiff cites to no evidence that Plaintiff's obesity was deemed by her doctors to be  "a severe case" or that Plaintiff's weight presented a functional impairment.  A mere diagnosis says nothing about the severity of the condition. *Ward v. Astrue,* 2008 WL 1994978 (M.D. Fla. May 8, 2008).  Plaintiff did not claim to be disabled by obesity in her applications (although her counsel mentioned it at her hearing), and no physician found her weight to be disabling.  To the extent her weight caused knee and back pain, the ALJ addressed this in his decision (R. 18-19) and found Plaintiff's allegations of disabling limitations to be not credible.  This determination is supported by substantial evidence.[7]

*Vocational Experts*

Plaintiff's last argument is that the hypothetical presented to the Vocational Expert was incomplete in that "the ALJ's question failed to present the VE with a restriction dealing with Plaintiff's hallucinations or borderline personality or the restrictions of living in a group home."(Brief at 20).  The Court finds no error.

Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Id.*  at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

---

[7]The record is replete with negative references regarding Plaintiff's credibility.  Her treating physician discharged her from his care, noting that Plaintiff wanted him to state that she was totally disabled and when he refused to do so because "I cannot lie on forms," she became upset, insisting that she did not want to work at all and refused to sign and complete the form (R. 297).  She was deemed non-cooperative in *several* separate pulmonary function tests, failing to put forth sufficient effort (R. 19, 178-181, 207-210, 250-251 - noting no effort), and her daily activities, as reported by third persons, include activities inconsistent with disabling limitations, such as housework, shopping, laundry, cooking and cleaning and driving (R. 141, 143, 151, 153).

Applied here, Plaintiff contends that the only mental limitations placed on the Plaintiff by the VE were "simple, routine work" and the ALJ "failed to tell the VE that Plaintiff had failed at a simple task as packing pills in a sheltered environment." While both statements are true, the issue is whether Plaintiff had additional limitations or restrictions that were not included in the hypothetical.[8]  While Plaintiff speaks of "restrictions" of hallucinations, borderline personality and living in a group home, she does not otherwise identify these restrictions, nor are any apparent from the record.  The record contains no physician imposed vocational-related restrictions resulting from Plaintiff's mental health condition (other than Dr. Angeles' discredited conclusory opinion that Plaintiff was "disabled"), supporting the ALJ's specific finding that Plaintiff "had never experienced any medically documented difficulties with activities of daily living, social functioning, concentration and task persistence, and adaptation to work or work-like situations." (R. 18).   Moreover, substantial evidence supports the ALJ's finding that Plaintiff's conditions resulted in only mild or moderate limitations.  Plaintiff's condition was controllable with medication, and she and others reported that Plaintiff got along well with others, handled stress and change pretty well, could follow instructions and handle her own finances, and was able to accomplish a wide variety of daily activities including conversing and visiting with friends and family, shopping several times a week, going to movies, watching television, cooking and cleaning, and taking care of her personal needs.  An ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported. " *Crawford v. Commissioner of Social Security,* 363 F. 3d 1155, 1158 (11th Cir. 2004).  Here, the hypothetical presented to the VE was consistent with the medical evidence and the other evidence the ALJ found to be credible.

---

[8]Plaintiff's counsel cross-examined the VE at hearing and had the opportunity to present alternative hypotheticals.

A final note is in order.  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  While it is clear that Plaintiff has a variety of challenges and difficulties, the only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and is in accordance with proper legal standards.  As the Court finds that to be the case, it must affirm the decision.

### CONCLUSION

The ALJ's decision is supported by substantial evidence and was made in accordance with proper legal standards.  As such, it is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 29, 2008.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record